IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JESSICA LYNN GARLICK, )
)
    Plaintiff, )
)
    v. ) Civil Action No. 16-119-E
)
CAROLYN W. COLVIN, ACTING )
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant. )

O R D E R

AND NOW, this 26th day of September, 2017, upon consideration of the parties' cross motions for summary judgment, the Court, upon review of the Acting Commissioner of Social Security's final decision, denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401, et seq., and denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381, et seq., finds that the Acting Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a

federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff argues, in essence, that the Administrative Law Judge ("ALJ") erred by: (1) improperly evaluating certain medical evidence in the record in making his residual functional capacity ("RFC") assessment; (2) failing to find that Plaintiff's impairments meet the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") at Step Three of the sequential analysis; and (3) failing to consider properly whether Plaintiff's treatment regimen prevents her from maintaining regular employment. The Court disagrees and finds that substantial evidence supports the ALJ's findings as well as his ultimate determination, based on all the evidence presented, of Plaintiff's non-disability.

First, the Court finds no merit in Plaintiff's contention regarding the ALJ's decision not to give greater weight to the opinion rendered by treating psychiatrist Frank Yohe, M.D., dated October 2, 2014, which found that Plaintiff was essentially disabled because she had several extreme and marked work-related limitations. (R. 583-85). It is well-established that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). "The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011). In fact, a treating physician's opinion is only entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (quoting 20 C.F.R. § 404.1527(c)(2)). "If, however, the treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ clearly explains [his or] her reasons and makes a clear record." Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 148 (3d Cir. 2007). Moreover, in making an RFC determination, an ALJ may give more weight to a non-examining professional's opinion if that opinion is better supported by the record. See Salerno v. Comm'r of Soc. Sec., 152 Fed. Appx. 208 (3d Cir. 2005) (affirming an ALJ's decision to credit the opinion of a non-examining state agency reviewing psychologist, rather than the opinions of a treating physician and a consultative examiner). Thus, a treating physician's opinion on the ultimate issue of disability is not entitled to any "special significance," and an ALJ is not required to accept it since the determination of whether an individual is disabled "is an ultimate issue reserved to the Commissioner." Smith v. Comm'r of Social Sec., 178 Fed. Appx. 106, 112 (3d Cir. 2006).

The Court finds that the ALJ did not, as Plaintiff alleges, improperly reject the report of Dr. Yohe in formulating Plaintiff's RFC, but rather, the ALJ fulfilled his duty as fact-finder to evaluate Dr. Yohe's opinion, considering a number of factors, and in light of all the evidence presented in the record. See 20 C.F.R. §§ 404.1527, 416.927. In fact, the ALJ thoroughly reviewed Plaintiff's medical records, including those related to Dr. Yohe's treatment, and specified that he was declining to give Dr. Yohe's opinion significant weight for several reasons. (R. 382). Specifically, the ALJ explained that Dr. Yohe's opinion first failed to address the 12-

month durational requirement found in 20 C.F.R. §§ 404.1505, 416.905. (R. 382-83). The ALJ also noted that Dr. Yohe offered no supporting clinical, laboratory, or diagnostic studies to substantiate his proposed limitations. (R. 383). Third, the ALJ explained that by restricting Plaintiff's task persistence, Dr. Yohe effectively opined that Plaintiff is disabled, which is an issue reserved to the Commissioner. (R. 383). Finally, the ALJ explained that, most importantly, Dr. Yohe's Medical Source Statement is contrary to his clinical evaluations, which the ALJ reviewed in detail, and to which the ALJ actually gave greater weight in his decision (see discussion, infra). (R. 383-84).

Moreover, the Court notes that the opinion of Dr. Yohe was provided on a simple form which consisted mainly of questions with options for the doctor to check. (R. 583-85). The form's few questions asking for specific medical or clinical findings to support the various assessments were left blank. The Court of Appeals for the Third Circuit has stated that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). Thus, the Court agrees with the ALJ that Dr. Yohe's opinion lacks support or details to justify his statements contained therein, and the Court finds that the ALJ sufficiently explained his reasons for declining to give Dr. Yohe's opinion controlling weight.

Additionally, the Court rejects Plaintiff's assertion that the opinion provided by state agency reviewing psychologist James Vizza, Psy.D., is not substantial evidence and that the ALJ's decision is therefore unsupported by the record since he gave that opinion significant weight in his RFC analysis. (R. 96-104). It is important to note that the Social Security regulations provide that state agency physicians are considered to be "highly qualified" and "experts" in social security evaluation. See 20 C.F.R. §§ 404.1513a(b)(1), 404.1527(e), 416.913a(b)(1), 416.927(e); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). The Court of Appeals for the Third Circuit has also held that opinions of non-examining state agency physicians "merit significant consideration" in making RFC assessments. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2012). Furthermore, although Plaintiff argues that Dr. Vizza's opinion predated the ALJ's decision and thus did not merit consideration, the Third Circuit has clearly stated that "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." Id. Thus, the Court strongly disagrees with Plaintiff's characterization of the opinion of Dr. Vizza as insubstantial evidence.

Moreover, while noting that he was giving great weight to the opinion of Dr. Vizza in finding non-exertional limitations pertaining to Plaintiff's depression, anxiety and learning disorder, the ALJ also explained that he was giving great weight as well to the opinion of Danelle Carrillo Bennett, Ph.D., and to the clinical treatment records of Plaintiff's treating psychiatrists at Stairways Behavioral Health, including those of Tariq Qureshi, M.D., Sean Su, M.D, and Dr. Yohe. (R. 382, 384). The ALJ then thoroughly discussed the findings of Dr. Bennett, who conducted psychological evaluations of Plaintiff on two separate dates in 2014 and concluded that Plaintiff could possibly work in a smaller setting with few employees involving limited commotion and repetitive, routine tasks. (R. 384, 523-26). The ALJ also reviewed and

summarized relevant treatment notes from the doctors at Stairways Behavioral Health, which largely indicated that Plaintiff was doing well, showed mental status examinations within normal limits, and indicated stable conditions. (R. 384). Thus, regardless of Plaintiff's contentions regarding the reliability of Dr. Vizza's opinion, the ALJ relied on much more than just that opinion in making these findings, and he provided ample discussion of the other evidence upon which he relied in making his determination. Accordingly, the Court does not agree with Plaintiff's assertion that the ALJ erred in evaluating the medical evidence discussed, supra, in making his RFC assessment.

Second, Plaintiff contends—quite cursorily—that the ALJ erred in finding that Plaintiff's impairments do not meet the severity of Listing 12.04 at Step Three of the sequential analysis. Because the ALJ found that Plaintiff has certain severe impairments, including depression, anxiety, learning disorder, obesity, headaches and sleep apnea, Plaintiff does have a condition or conditions that could potentially qualify as a disorder under one or more of the above-mentioned Listings, including Listing 12.04. (R. 376). The Court notes, however, that the Listings operate as a regulatory device used to streamline the decision-making process by identifying claimants whose impairments are so severe that they may be presumed to be disabled. See 20 C.F.R. §§ 404.1525(a), 416.925(a). Because the Listings define impairments that would prevent a claimant from performing any gainful activity—not just substantial gainful activity—the medical criteria contained in the Listings are set at a higher level than the statutory standard for disability. See Sullivan v. Zebley, 493 U.S. 521, 532 (1990). Thus, a claimant has the burden of proving a presumptively disabling impairment by presenting medical evidence that meets all of the criteria of a listed impairment or is equal in severity to all of the criteria for the most similar listed impairment. See 20 C.F.R. §§ 404.1526, 416.926.

In this case, the ALJ explained in his decision that Plaintiff's impairments had been evaluated under quite a few Listings, including Listing 12.04, which deals with affective disorders. (R. 377). Upon review of the relevant evidence of record, the ALJ found that Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria" of Listing 12.04 or any of the other Listings that were considered. (R. 377). The Court notes that, according to the statute, the required level of severity for the Listing at issue is met only "when the requirements in both A and B are satisfied, or when the requirements in C are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. Plaintiff asserts here that she meets the requirements in paragraph B and, as the ALJ explained in his analysis of this issue, in order to satisfy the paragraph B criteria, Plaintiff's impairments have to result in at least two of four of the following limitations: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (R. 377-78).

As noted, the ALJ discussed Plaintiff's symptoms and treatment in his decision, but he ultimately found that the above-stated requirements were simply not met or medically equaled. In fact, he addressed evidence relevant to the above elements but concluded that Plaintiff's limitations included the following: mild limitation in activities of daily living; moderate limitation in social functioning; moderate limitation in the area of concentration, persistence, or

4

pace; and no episodes of decompensation. (R. 379). The Court noted that "episodes of decompensation" are specifically defined in the statute as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning . . . . that would ordinarily require increased treatment or a less stressful situation . . . . [and] may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household)." 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(C)(4).

Plaintiff asserts that because the record repeatedly indicates that she has sleep disturbance, decreased energy, difficulty concentrating and/or thinking, intermittent thoughts of suicide, and "marked" limitations in her social functioning, concentration, persistence and/or pace, the requirements of depressive syndrome under paragraph B of Listing 12.04 are met. In support of her contention, Plaintiff cites generally to her treatment records from Stairways Behavioral Health (and to Dr. Yohe's opinion, discussed supra). (R. 527-68, 572-85). The Court cannot, however, simply reweigh the evidence at this juncture in order to come to a different conclusion than that reached by the ALJ as discussed above. See Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990). The ALJ has already considered the evidence of record and made findings on this issue, and the Court notes that substantial evidence supports that decision. The Court therefore finds that the ALJ appropriately found that the paragraph B criteria of Listing 12.04 is not satisfied. (R. 379). Additionally, there is also no evidence of record to establish that Plaintiff meets the paragraph C criteria of this Listing. (R. 379). Thus, after review of the ALJ's decision, the Court finds no merit in Plaintiff's argument that the ALJ erred in failing to find that her impairments meet the severity of Listing 12.04.

Lastly, Plaintiff contends that the ALJ erred in relying on the answer provided by the vocational expert ("VE") to the ALJ's hypothetical question posed at the administrative hearing, and that he failed to consider, in addition, the VE's response to Plaintiff's attorney's follow-up question about an additional limitation regarding absences from work. Specifically, the ALJ asked the VE—assuming an individual of Plaintiff's age, education and work experience who can perform light work not requiring working in areas of concentrated fumes, odors, gases, temperature extremes or other similar environmental irritants; who can perform only routine, repetitive tasks with only occasional interaction with the public, coworkers and supervisors; and who can handle only occasional judgment, decision-making and workplace changes—whether jobs exist in the national economy that such an individual can perform. (R. 386, 427-29). Considering these limitations, the VE testified that such an individual would be able to perform the requirements of representative occupations such as stock marker, photocopy machine operator, and silverware wrapper. (R. 386, 428-29). Plaintiff argues that the ALJ should also have considered the VE's response to Plaintiff's attorney's follow-up question as to whether there would be work for a person who "would either have to leave work early in the morning or in the afternoon" 2-4 times per month to attend doctors' appointments. (R. 429). Plaintiff asserts that the record shows that she frequently attended scheduled medical appointments and that her need for such appointments was increasing. Plaintiff claims that such substantial evidence of record about the intensity of her medical treatment, which would have precluded her

from engaging in any substantially gainful activity since her date of application because of frequent absences from work, was wrongfully disregarded by the ALJ.

It is important to note that, while the hypothetical question to the VE must accurately portray the claimant's impairments, such question need only reflect those impairments that are adequately supported by the record. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); see also 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (explaining that your RFC "is the most you can still do despite your limitations"). Plaintiff correctly points out that the VE testified that missing more than 8 days of work per year would jeopardize an individual's employment. (R. 429). Similarly, the VE also testified that a person who would be off task at least 20% of the workday could not maintain employment. (R. 429). While Plaintiff's attorney did pose a follow-up question as to whether an additional limitation regarding missing work for doctors' appointments would be tolerated, when the ALJ ultimately formulated Plaintiff's RFC, he did not find that this additional suggested restriction needed to be included therein.

The Court emphasizes that the ALJ clearly explained the reasoning underlying Plaintiff's RFC, which formed the basis for the ALJ's hypothetical question regarding the ability of an individual such as Plaintiff to perform jobs in the national economy. The ALJ included in his analysis a thorough discussion of the record in this case, which included Plaintiff's treatment notes revealing her various appointments. Nevertheless, Plaintiff attempts to contest the ALJ's conclusion by arguing that, based on the medical records from her various appointments, she would obviously miss multiple partial days of work each month due to her appointment schedule. The Court first notes that the record does not support Plaintiff's argument that her symptoms are increasing or that her condition is likely to worsen, thereby creating the need for an increased number of appointments in the future. Further, while the record undoubtedly shows that Plaintiff has attended a number of appointments, there is no indication in the record that each appointment requires her to miss a full day of work. Additionally, since the record does not show that such appointments could not be scheduled outside of Plaintiff's prospective working hours, and since most of her appointments appear to have lasted less than an hour (and many were quite a bit shorter), there is also no indication in the record that Plaintiff would even have to miss partial days of work in order to attend her appointments. Quite simply, Plaintiff never established that she would have the necessary absences per month that the VE indicated would preclude employment. Thus, the Court finds that, in making his determination, the ALJ relied upon the response to an appropriate hypothetical question which included those limitations, properly portrayed in the RFC, that were supported by the record.

In sum, the Court finds that the ALJ properly evaluated the medical opinion evidence of record in formulating the RFC in this case, and that the ALJ did not err in finding that Plaintiff's impairments did not meet the severity Listing 12.04 at Step Three of the sequential analysis. Additionally, the Court finds that the ALJ's hypothetical question to the VE fully accommodated the limitations that were supported by the record, which were also properly included in the RFC, and that the ALJ did not err in relying on the response of the VE to his hypothetical question. Accordingly, the Court affirms.

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 9) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 11) is GRANTED.

s/ Alan N. Bloch  
United States District Judge

ecf: Counsel of record